## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 06 2019, 10:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

A. David Hutson
Hutson Legal
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Buddy Lee Wright,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | November 6, 2019<br><br>Court of Appeals Case No.<br>19A-CR-1237<br><br>Appeal from the<br>Clark Circuit Court<br><br>The Honorable<br>Bradley B. Jacobs, Judge<br><br>Trial Court Cause No.<br>10C02-1504-F5-61 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Buddy Lee Wright pled guilty to Level 5 felony dealing in marijuana, and the trial court sentenced him to three years, with eighteen months executed on community corrections and eighteen months suspended to probation. When Wright later violated the terms of his community-corrections placement, the trial court ordered him to serve all three years (minus credit for time served) in the Indiana Department of Correction. Wright now appeals, arguing that the trial court erred in ordering him to serve all three years in the DOC because it mistakenly believed that this was its only option. Because the record shows that the trial court did not believe that its only option was to commit Wright to the DOC for all three years, we affirm.

# Facts and Procedural History

[2] In April 2015, the State charged Wright with several marijuana-related offenses, including Level 5 felony dealing in marijuana. Wright was released on his own recognizance. Appellant's App. Vol. II p. 3. On December 16, 2015, Wright failed to appear for a status conference, and a warrant was issued for his arrest.

[3] As it turned out, the reason Wright did not appear for the status conference on December 16 was because the State of Kansas charged him on December 8 with felony distributing marijuana. *Id.* at 66. Wright was convicted, and in March 2016 a Kansas trial court sentenced him to eighteen months in prison and twenty-four months of probation. *Id.* at 30, 66. Thereafter, Wright asked

the State of Indiana to extradite him so that he could resolve this case. *Id.* at 30. In May 2016, the trial court ordered the Clark County Sheriff to transport Wright from the Stockton Correctional Facility in Stockton, Kansas, to the Clark County Jail. *Id.* at 32.[1] After Wright was returned to Indiana, the warrant for his arrest was recalled, and he bonded out at some point. *Id.* at 33, 42.

[4] Thereafter, in January 2017, Wright and the State entered into a plea agreement, which provided that Wright would plead guilty to Level 5 felony dealing in marijuana, and the State would dismiss the remaining charges. The agreement also provided that Wright's sentence would be three years, with eighteen months executed to be served on "Home Incarceration through Community Corrections" and eighteen months suspended to probation. *Id.* at 43. The following month, the trial court accepted Wright's guilty plea, entered judgment of conviction, and set sentencing for August 2017. *Id.* at 47.

[5] After numerous continuances, the sentencing hearing was reset to May 30, 2018. The day before, Wright requested a continuance because he had been injured in a car accident in Louisville in which two people were killed. The sentencing hearing was reset to August 9. At the sentencing hearing, the trial court, in accordance with the plea agreement, sentenced Wright to three years, with eighteen months executed on "Home Incarceration through Clark County

---

[1] It appears that Wright was discharged from parole in the Kansas case in June 2018. Appellant's App. Vol. II p. 66.

Community Corrections" and eighteen months suspended to probation. *Id.* at 81, 83.

[6]     At a review hearing a few days later, Wright was granted a furlough until August 29 so that he could continue his medical treatment. *Id.* at 13. On September 10, the State filed a petition to revoke Wright's community-corrections placement for failing "to report to Community Corrections for executed sentence after being granted furlough from court on 8/13/2018." *Id.* at 86. A warrant was issued for Wright's arrest, and Wright was arrested approximately three months later on December 12, 2018. At the initial hearing on the revocation petition, the trial court released Wright on his own recognizance, ordered him to report to community corrections the next day, and set a revocation hearing for January 22, 2019. Tr. pp. 7-8.

[7]     Wright, however, did not appear at the January 22 revocation hearing because he was arrested on December 21 on "reckless homicide" charges that had been filed against him in Kentucky for the May 2018 car accident that killed two people. *Id.* at 9, 13, 19-20. The court issued a warrant for Wright's arrest.

[8]     Although the details aren't clear, it appears that on March 30, 2019, Wright was extradited from Kentucky to resolve this case. *Id.* at 10, 19. An updated risk assessment was completed, and Clark County Community Corrections determined that Wright did not qualify for community corrections because of his high-risk score on the assessment; his "failed attempts with community-based placement," including unpaid fees of $965; and the fact that he had a

"pending warrant out of Floyd County Superior Court II."[2] Appellant's App. Vol. II p. 111.

[9] The revocation hearing was held in April. At the beginning of the hearing, defense counsel told the trial court that Wright was going to admit to violating the terms of his community-corrections placement. The court then advised Wright as follows:

> Alright, Mr. Wright you understand that when you admit to the violation, I can revoke all of your time and refer you to DOC, or I can send you back to Community Corrections. That's where you were and that's really my only two options, releasing you to probation is not an option today. You understand that without an agreement I can do anything in that range there . . . .

Tr. p. 16. After Wright acknowledged what the court said, he admitted that he violated the terms of his community-corrections placement. *Id.* at 18. The hearing then turned to sanctions. The State requested "full revocation of [Wright's] sentence" because of Clark County Community Corrections' determination that he no longer qualified. *Id.* Defense counsel then presented testimony from Wright, who explained that he didn't report to community corrections in August 2018 because he "misunderstood" when he was supposed to report back. *Id.* at 21. He testified that he knew a warrant had been issued

---

[2] On August 2, 2018, Wright was charged with Class A misdemeanor driving while suspended (elevated due to a previous conviction). *See* 22D02-1808-CM-1567. He pled guilty in August 2019 and was sentenced to thirty days.

for his arrest in September, but he decided to go back to work in order to "get money together for counsel." *Id.* at 20. But when that plan didn't work out, he turned himself in on the warrant in December 2018. Finally, Wright acknowledged that the reckless-homicide case against him was still pending in Kentucky.[3] Defense counsel asked the trial court to give Wright "another chance in Community Corrections." *Id.* at 22. In response to this request, the trial court observed that Wright had not been "sincere about getting stuff straightened out." *Id.* at 23. The court elaborated:

> He was in custody. We cut him loose. And from what we've seen he's consistently . . . fallen short. I'm not gonna order him back to Community Corrections over the objection of Community Corrections. That would be irresponsible. Mr. Wright I've got you with [three years] left to serve. What I'm gonna do is order that . . . the [three years] be served in custody. But I'll give you credit time . . . .

*Id.* at 23-24. When defense counsel started calculating credit time, the trial court interjected:

> If you give me the dates I'll approve as generous as I can with the direction of the State, but I can't do anything other than impose the order of executed sentence to be sent to the Department of Correction[]. When everything else gets straightened out I'm gonna order purposeful incarceration.

---

[3] We do not know the current status of the Kentucky case. On appeal, Wright does not acknowledge that he was charged in Kentucky for the May 2018 car accident.

*Id.* at 24.

Wright now appeals.

# Discussion and Decision

Wright contends that the trial court's decision to order him to serve all three years in the DOC was based on its "misinterpretation" of Indiana Code section 35-38-2.6-5 that its "only option" was "to order him to serve the entirety of both the community corrections portion of his sentence and the suspended portion of his sentence." Appellant's Br. p. 8. Wright asserts that had the trial court known that it could have ordered him to serve less than all three years in the DOC, it might have done so.

Indiana Code section 35-38-2.6-5 authorizes a community-corrections director to choose among the following courses of action when a defendant, like Wright, violates the terms of his placement:

> (1) Change the terms of the placement.
>
> (2) Continue the placement.
>
> (3) Reassign a person assigned to a specific community corrections program to a different community corrections program.
>
> (4) Request that the court revoke the placement and commit the person to the county jail or department of correction for the remainder of the person's sentence.

Here, the record shows that the trial court did not believe that its only option was to commit Wright to the DOC for all three years; rather, the court determined that three years was an appropriate sanction given the facts of the case.

[13] At the revocation hearing, when defense counsel told the trial court that Wright was going to admit to violating community corrections, the trial court advised Wright that without an agreement, it could revoke "all" of his time and send him to the DOC, send him back to community corrections, or do "anything in that range." Tr. p. 16. This is a clear indication that the trial court knew that it had options other than ordering Wright to serve all three years in the DOC. After Wright testified and requested that he be returned to community corrections, the trial court said no because Wright had not been "sincere about getting stuff straightened out." *Id.* at 23. The court elaborated, "He was in custody. We cut him loose. And from what we've seen he's consistently . . . fallen short." *Id.* As detailed above, the record confirms that Wright has "fallen short." Since Wright was released on his own recognizance in April 2015 in this case, he has been charged with crimes in two other states and Floyd County, served time in prison in Kansas, and been incarcerated in Kentucky. Notably, Wright does not acknowledge **any** of these events on appeal. Because the record reflects that the trial court ordered Wright to serve all three years in the DOC not because of a misunderstanding of its options but rather because of the facts in this case, we affirm the trial court.

[14] Affirmed.

Riley, J., and Bradford, J., concur.